**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**UNITED STATES OF AMERICA,**

                           **Plaintiff,**

  **v.**

                                                          **18-CR-126W**

**DEONTE COOPER,**

                           **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━


## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Elizabeth A.

Wolford, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear

and report upon dispositive motions.


## PRELIMINARY STATEMENT

          The defendant, Deonte Cooper ("the defendant"), is charged, along with

other co-defendants, with having violated Title 18 U.S.C. § 371 (Conspiracy to Commit

Firearms Offenses).   Dkt. #31.   He filed a motion seeking to suppress the use of

statements allegedly made by him to law enforcement personnel and evidence seized

pursuant to a state search warrant for his residence.   Dkt. #69.   The government filed

its opposition to this motion.   Dkt. #74.   Thereafter, an evidentiary hearing was held by

this Court relating to the claims raised by the defendant in his motion to suppress, and a

transcript of that hearing was filed on July 31, 2019.   Dkt. #107.   At the hearing, the

government called Detective Michael Palinkas of the Ashtabula, Ohio Police Force and

Special Agent Elizabeth Gardner of the Bureau of Alcohol, Tobacco, Firearms and

Explosives as witnesses and also offered a number of exhibits which were received in

evidence.   The defendant did not call any witnesses and did not testify at this hearing.

A post-hearing memorandum of law in support of the defendant's motion to suppress

was filed on August 29, 2019 (Dkt. #115) and the government filed its memorandum in

opposition on August 31, 2019 (Dkt. #116).   The matter was then taken under

advisement by this Court.


### FACTS[1]


In April of 2018, a joint task force, consisting of state and federal law

enforcement officers, became aware of multiple sales of firearms to a large number of

people residing in the Ashtabula, Ohio area.   T. 64.   An investigation of this gun

trafficking in the Ashtabula, Ohio area was undertaken, and an additional component of

narcotic trafficking was added to that investigation.   T. 6-7, 59.   The residence of the

defendant, 6259 Runkle Avenue, Ashtabula, Ohio was identified as a place where

narcotics were being distributed.   T. 9-10.


On May 30, 2018, a surveillance of 6259 Runkle Avenue was conducted,

and during the course of that surveillance, it was determined that there was "traffic

coming in and out of that house" which resulted in making "several stops of those

---

[1] The facts are taken from the Transcript of the evidentiary hearing held on June 24, 2019, and references to that transcript are designated "T" followed by the appropriate page number(s).

individuals" who had been observed entering and leaving the premises at 6259 Runkle Avenue that day.   T. 74.   One of the individuals stopped in this "interdiction" was Derek Welch who was taken to Ashtabula Police Headquarters and interrogated by Detective Palinkas because fentanyl had been found on his person after leaving 6259 Runkle on May 30, 2018.   T. 11-12.   Welch told Detective Palinkas that he had gone to 6259 Runkle Avenue that day for the purpose of purchasing fentanyl from a person he knew as "Terry" who was later identified as the defendant.   Welch told Detective Palinkas that he had been at 6259 Runkle Avenue "approximately twenty (20) times" in 2018 for the purpose of purchasing heroin.   Government Exhibit 1, p. 6, ¶ 25.   Welch also showed Detective Palinkas the record of his cell phone communications with the defendant that were on his cell phone, including the arrangement for the purchase of fentanyl from the defendant on May 30, 2018.   T. 12, 46, 60-61.   As a result of this information obtained from Welch and the information developed by the joint task force in April and May of 2018 relating to gun and narcotic trafficking, Detective Palinkas submitted his sworn affidavit to Laura Digiacomo, Judge, Ashtabula Municipal Court in support of his application seeking a search warrant for the premises located at 6259 Runkle Avenue, Ashtabula, Ohio.   T. 12-13, Government Exhibit 1.   As part of his affidavit, Detective Palinkas stated, based on the aforesaid investigation, that he believed there was probable cause that narcotics "and any items associated with the trafficking of narcotics," including "firearms and other prohibited weapons" would be found at 6259 Runkle Avenue.   Government Exhibit 1, pp. 6-7.

Judge Digiacomo issued a search warrant on May 30, 2018 authorizing the search of 6259 Runkle Avenue, Ashtabula, Ohio and the seizure of drug trafficking evidence found in that premises after finding that probable cause for the issuance of a search warrant had been established in the May 30, 2018 affidavit of Detective Palinkas, which affidavit she expressly "annexed, incorporated and adopted" in the search warrant "as if the [affidavit] were fully written [in the search warrant]." Government Exhibit 1, p. 1.

A Search of the premises at 6259 Runkle Avenue was conducted on May 30, 2018 by joint task force officers which resulted in the finding and seizure of marijuana, two bags of white powder, fentanyl, drug paraphernalia, ammunition, a rifle and U.S currency.   T. 19-20, 29-30, 52-53.

The defendant was arrested and interrogated by Special Agent Gardner. Before conducting the actual interrogation of the defendant, Special Agent Gardner utilized an "ATF form" (Government Exhibit 5) by reading the "Statement of Rights" stated in that form to the defendant.   T. 64-65, 66-67.   After Special Agent Gardner finished reading the "statement of rights" to the defendant, she asked him if he understood his rights which the defendant acknowledged he did.   She then asked the defendant if he wished to waive those rights which the defendant indicated he did and thereupon signed the "waiver" of rights (Government Exhibit 5).   T. 64-65, 67-68, 71. Special Agent Gardner then signed the form as a witness.   T. 65.   The interview and

4

interrogation of the defendant by Special Agent Gardner was video and audio recorded

on May 30, 2018.    Government Exhibit 6.

## DISCUSSION AND ANALYSIS

### 1.  Suppression of Defendant's Statements

In his affidavit filed in support of his motion to suppress the use of his

statements given to law enforcement officers after being arrested, the defendant asserts

that "at the time that [he] made the statements, [he] was not represented by an attorney"

and that he "did not voluntarily make these statements."    Dkt. #79, p. 1, ¶ 2.

> Miranda further recognized that after the required warnings
> are given the accused, "[i]f the interrogation continues
> without the presence of an attorney and a statement is
> taken, a heavy burden rests on the government to
> demonstrate that the defendant knowingly and intelligently
> waived his privilege against self-incrimination and his right to
> retained or appointed counsel." 384 U.S., at 475, 86 S.Ct., at
> 1628. We noted in North Carolina v. Butler, 441 U.S., at 373,
> 99 S.Ct., at 1757, that the question whether the accused
> waived his rights "is not one of form, but rather whether the
> defendant in fact knowingly and voluntarily waived the rights
> delineated in the Miranda case." Thus, the determination
> whether statements obtained during custodial interrogation
> are admissible against the accused is to be made upon an
> inquiry into the totality of the circumstances surrounding the
> interrogation, to ascertain whether the accused in fact
> knowingly and voluntarily decided to forgo his rights to
> remain silent and to have the assistance of counsel. Miranda
> v. Arizona, 384 U.S., at 475–477, 86 S.Ct., at 1628–1629.

*Fare v. Michael C.*, 442 U.S. 707, 724–25, (1979).

The United States Supreme Court has expressly stated:

Echoing the standard first articulated in Johnson v Jerbst, 304 US 458, 464, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently."   384 US, at 444, 475, 16 L Ed 2d 694, 86 S Ct 1602, 10 Ohio Misc 9, 36 Ohio Ops 2d 237, 10 ALR3d 974. The inquiry has two distinct dimensions.   Edwards v. Arizona, supra, at 482, 68 L Ed 2d 378, 101 S Ct 1880; Brewer v Williams, 430 US 387, 404, 51 L Ed 2d 424, 97 S Ct 1232 (1977).   First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.   Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.   Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Fare v Michael C., 442 US 707, 725, 61 : Ed 2d 197, 99 S Ct 2560 (1979).   See also North Carolina v Butler, 441 US 369, 374-375, 60 L Ed 2d 286, 99 s Ct 1755 (1979).

*Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995).

In making a determination as to whether a defendant's confession or statements given were voluntarily given, the Court of Appeals for the Second Circuit has set forth guidelines to be utilized in that decision-making process of applying "the totality of the circumstances test."

In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. The relevant characteristics of the individual who confessed are the individual's experience and background, together with the suspect's youth and lack of education or intelligence. *See Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047; *Guarno,* 819 F.2d at 30. The second circumstance, the conditions under which a suspect is questioned, includes the place where an interrogation is held*, Mincey,* 437 U.S. at 398, 98 S.Ct. at 2416 ("It is hard to imagine a situation less conducive to the exercise of 'a rational intellect and a free will' than [interrogation in a hospital's intensive care unit].")*; see also Bram,* 168 U.S. at 563, 18 S.Ct. at 194, and the length of detention, *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047. The presence or absence of counsel is a significant condition because counsel can "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." *Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625.

The final and most critical circumstance for purposes of this appeal is the law enforcement officers' conduct. Facts bearing on that conduct include the repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights*, Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047; whether there was physical mistreatment such as beatings*, see Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)*;* or long restraint in handcuffs, and whether other physical deprivations occurred such as depriving an accused of food, water or sleep*, see Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047; or even of clothing, *see Bram,* 168 U.S. at 561, 18 S.Ct. at 194 (suspect was taken to police detective's office and there "he was stripped of his clothing") for a prolonged period. In addition—as specifically raised in the instant case—such police conduct might include psychologically coercive techniques such as brainwashing or promises of leniency or other benefits.

*Green v. Scully*, 850 F.2d 894, 901-902 (2d Cir. 1988).

The defendant has not presented any evidence, other than his aforesaid affidavit, to support his claim that the statements he made to Special Agent Gardner on May 30, 2018 were not voluntarily made.  At the Evidentiary Hearing, Special Agent Gardner testified[2] that after the defendant was arrested, she interviewed him and prior to asking any questions of the defendant, she gave him *Miranda* warnings and an advice of rights which she read to him from an ATF "Advice of Rights and Waiver" form (Government Exhibit 5).  T. 64.  After being so advised, the defendant indicated to her that he understood his rights and was willing to waive them and answer questions.  T. 64-65, 67-68, 71.  The entire interview or interrogation of the defendant by Special Agent Gardner was video and audio recorded (Government Exhibit 6).  I have reviewed this recording and it is quite clear that the very first thing that Special Agent Gardner did after she and the defendant sat down in the interview room, was to read the *Miranda* warnings and advice of rights to the defendant.  After doing so and asking the defendant if he understood those rights, the defendant indicated that he did and agreed to sign the "Waiver" wherein he acknowledged that he has read the "statement of his rights" which he understands and that he was "willing to answer questions without a lawyer present." Government Exhibit 5.  The video/audio recording (Government Exhibit 6) clearly establishes the defendant signing the "Waiver" without any pressure, promises or threats being imposed by Special Agent Gardner or the other law enforcement officer present.

---

[2] While listening to the testimony of Special Agent Gardner, I observed her demeanor and found her to be a credible witness.

8

The video/audio recording (Government Exhibit 6) also establishes that prior to signing the "Waiver," the defendant asked Special Agent Gardner the following:

> My only question is, if I sign it [the form] and I want a lawyer, right, I can still ask for one [or words to that effect].

The video/audio recording (Government Exhibit 6) also clearly establishes the response given by Special Agent Gardner to the defendant's question wherein she states:

> Yes, and then we stop the interview.

The defendant then signs the "Waiver" form and the formal interrogation takes place for approximately fifty (50) minutes until the defendant states that he wants a lawyer.   Upon so declaring, the interview of the defendant is terminated.

My review of the video/audio recording (Government Exhibit 6) causes me to conclude that the defendant made a knowing and voluntary waiver of his rights, including the right to have a lawyer present during the interrogation and that he was in no way coerced or overpowered by the agents in their questioning of the defendant and that his replies and statements made to the agents were voluntarily given.   Therefore, it is recommended that the defendant's motion seeking to suppress the use of his statements made to Special Agent Gardner on May 30, 2018 be denied in all respects.

## 2.  Suppression of Evidence Seized from 6259 Runkle Avenue

The defendant asserts that "because of the overly broad nature of the search warrant in this case all of the evidence obtained must be suppressed."   He further argues that the search warrant of May 30, 2018 (Government Exhibit 1) "does not state any items to be seized" and only "vaguely references 'evidence of and in violation of ORC 2925.03 Trafficking in Drugs, and ORC 2925.11 Possession of Drugs'" and therefore "the search warrant did not meet the particularity requirement of the United States Constitution."   Dkt. #69, pp. 5-6, ¶s 6, 9-10.   In support of his motion, the defendant relies heavily on the decision in *United States v. George*, 975 F.2d 72 (2d Cir. 1992) wherein the Court stated that the "mere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize."   *George* at 76.   This reliance is misplaced for the reasons that follow.

The search warrant issued by Judge Digiacomo (Government Exhibit 1) expressly states "that there has been filed with [her] an affidavit for a Search Warrant, **a copy of which is hereby annexed, incorporated and adopted herein as if the same were fully written herein**" (emphasis added).

The United States Supreme Court has stated:

10

> We do not say that the Fourth Amendment forbids a warrant
> from cross-referencing other documents. Indeed, most
> Courts of Appeals have held that a court may construe a
> warrant with reference to a supporting application or affidavit
> if the warrant uses appropriate words of incorporation, and if
> the supporting document accompanies the warrant. See,
> *e.g.*, *United States* v. *McGrew*, 122 F. 3d 847, 849–850
> (CA9 1997); *United States* v. *Williamson*, 1 F. 3d 1134,
> 1136, n. 1 (CA10 1993); *United States* v. *Blakeney*, 942
> F. 2d 1001, 1025–1026 (CA6 1991); *United States* v.
> *Maxwell*, 920 F. 2d 1028, 1031 (CADC 1990); *United States*
> v. *Curry*, 911 F. 2d 72, 76–77 (CA8 1990); *United States* v.
> *Roche*, 614 F. 2d 6, 8 (CA1 1980).

*Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

The Court of Appeals for the Second Circuit has also expressly rejected

an argument similar to that of the defendant herein, wherein it stated:

> We also find no merit in Defendant's second argument that
> the search warrant is unconstitutional because it contained a
> cross-reference to the applicant's affidavit rather than listing
> on the face of the warrant the items to be seized. Waker's
> reliance on *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284,
> 157 L.Ed.2d 1068 (2004), is misplaced. Waker argues that in
> stating that "[t]he Fourth Amendment by its terms requires
> particularity in the warrant, not in the supporting documents,"
> *id.* at 557, 124 S.Ct. 1284, the Supreme Court held that the
> Fourth Amendment requires a warrant, on its face, to specify
> with particularity all items for which the search is authorized.
> Contrary to Waker's argument, however, the Court in *Groh*
> expressly pointed out that the Fourth Amendment does not
> necessarily prohibit all warrants from cross-referencing other
> documents. Rather, "a court may construe a warrant with
> reference to a supporting application or affidavit if the
> warrant uses appropriate words of incorporation, and if the
> supporting document accompanies the warrant." *Id.* at 557–

11

58, 124 S.Ct. 1284.

*United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008).

The defendant's claim that the search warrant of May 30, 2018 (Government Exhibit 1) "does not state any items to be seized" is legally incorrect. Since the affidavit of Detective Palinkas sworn to May 30, 2018 was properly incorporated and annexed to the search warrant, that affidavit constitutes a legally appropriate particularized description of the items to be seized pursuant to the search warrant.   More specifically, the affidavit states that "seizure is sought [of] Heroin, a schedule I Controlled Substance as defined by ORC 2925.01 (Ohio Revised Code), Drug Paraphernalia, as defined by ORC 2925.14, Possession of Drugs as defined in ORC 2925.00, and other items which are evidence of and in violation of Trafficking in Illegal Drugs, ORC 2925.03 and any items associated with the Trafficking of Narcotics" which "include but are not limited to Heroin, digital scales, drug packaging materials, pipes, syringes, **firearms and other prohibited weapons** . . . (emphasis added) (Government Exhibit 1, pp. 6-7).   Thus, the weapon which is the subject matter of the indictment herein was properly and legally seized from 6259 Runkle Avenue, Ashtabula, Ohio on May 30, 2018 pursuant to the search warrant.   (Government Exhibit 1).   For the same reasons stated above, defendant's claim that the search warrant of May 30, 2018 (Government Exhibit 1) "was overly broad" is without legal merit.

It is also pointed out that Judge Digiacomo's specific reference to "ORC 2925.03 Trafficking in Drugs and ORC 2925.11 Possession of Drugs" acts as a legal limitation as to what the officers executing the search warrant could search for, *i.e.*, drugs and evidence of drug trafficking which could include weapons, and therefore further satisfies the particularity requirement.

Lastly, the defendant claims that the search warrant of May 30, 2018 (Government Exhibit 1) "should be invalidated and evidence seized as a result suppressed due to officer's failure to provide copy of warrant to defendant" and because there was not "probable cause" for the issuance of the search warrant.   Dkt. #69, pp. 7-8; Dkt. #115, pp. 8-12.   For the reasons that follow, both of these arguments are rejected as being without legal merit.

Detective Palinkas testified[3]  at the evidentiary hearing that a copy of the search warrant and an inventory of the items seized pursuant to that search warrant were left in the residence located at 6259 Runkle Avenue, Ashtabula, Ohio since the defendant was not present, having been arrested and transported to the Ashtabula Police Department.   T. 41.

Where evidence secured from a state search warrant is employed in a federal prosecution, review of the warrant is concerned solely with the requirements of

---

[3] While listening to the testimony of Detective Palinkas, I observed his demeanor and found him to be a credible witness.

the Fourth Amendment.   *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993); *see*

*Preston v. United States*, 376 U.S. 364 (1964) ("The question whether evidence

obtained by state officers and used against a defendant in a federal trial was obtained

by unreasonable search and seizure is to be judged as if the search and seizure had

been made by federal officers.").

Rule 41(f)(1)(C) of the Fed. R. Crim. P. states:

> Receipt.   The officer executing the warrant must give a copy
> of the warrant and a receipt for the property taken to the
> person from whom, or from whose premises the property
> was taken **or leave a copy of the warrant and receipt at
> the place where the officer took the property** (emphasis
> added).

Since Detective Palinkas, as the executing officer of the May 30, 2018

search warrant (Government Exhibit 1) left a copy of the search warrant and the

inventory of items sized at the defendant's residence covered by the warrant, there was

compliance with the requirements of Rule 41(f)(1)(C) of the Fed. R. Crim. P. and,

therefore, no violation of the Fourth Amendment.

On the claim that there was not legal probable cause for the issuance of

the May 30, 2018 search warrant (Government Exhibit 1), the defendant argues that the

surveillance conducted by law enforcement personnel at 6259 Runkle Avenue consisted

of "short-duration stops that police observed only in the course of six (6) hours with no

14

other prior surveillance done of the residence" and therefore, "these short-duration stops cannot in anyway establish that some type of criminal activity was occurring at this residence."   Dkt. #115, p. 9.   The defendant further argues that Detective Palinkas was merely speculating as to what was occurring at 6259 Runkle Avenue on May 30, 2018 since "law enforcement did not see any hand-to-hand transactions of any kind to take place while monitoring these short duration stops."   Dkt. #115, pp. 9-10.   The defendant also argues that Detective Palinkas made improper or erroneous assumptions and conclusions that the defendant had completed a drug transaction on May 30, 2018 with Derek Welch since Welch stated that he purchases the drugs from a person he knew as "Terry" but that Welch never identified the defendant as being the person "Terry."   Dkt. #115, p. 10.   The defendant also attempts to discredit the cellphone information given by Welch to Detective Palinkas regarding his drug transaction with the defendant as being unreliable and based on "speculation." Dkt. #115, p. 11.   As a result, he argues that "the connections Detective Palinkas attempted to make are too tenuous and cannot meet the standard for a showing of probable cause."   Dkt. #115, p. 11.   These arguments of the defendant are rejected in their entirety.

Detective Palinkas submitted a seven-page typewritten affidavit to Judge Digiacomo in support of his application for a search warrant for the premises located at 6259 Runkle Avenue, Ashtabula, Ohio wherein he described his law enforcement training and experience and the history of the law enforcement

investigation, including the events of May 30, 2018 that occurred before he submitted his request for the search warrant in question (Government Exhibit 1).   Contrary to the defendant's claim that this was more than a single surveillance of 6259 Runkle Avenue that only resulted in "short-duration stops that police observed only in the course of six (6) hours" (Dkt. #115, p. 9), Detective Palinkas stated that there had been an ongoing "joint investigation with the Bureau of Alcohol, Firearms, Tobacco and Explosives into a multi-state case involving 'straw' purchasing of several firearms" and that during that investigation, an individual initially identified as "Terry" "was identified as being heavily involved in the straw purchases of firearms" and that as the investigation continued, "Terry was identified as Deonte Jray Cooper" and that he "was also selling large quantities of heroin" from "6259 Runkle Avenue, Ashtabula, Ohio."   Government Exhibit 1, p. 4, ¶ 120.

The surveillance of 6259 Runkle Avenue on May 30, 2018 produced an individual who had just recently engaged in a drug transaction with the defendant at 6269 Runkle Avenue on May 30, 2018.   Interrogation of this individual, Derek Welch, established that the drug transaction had been arranged by Welch with the defendant when Welch called the defendant on his cellphone. Welch also identified the defendant as being the "Terry" that he had made at "least" 20 purchases of drugs from 6259 Runkle Avenue.   Government Exhibit 1, pp. 5-6, ¶s 23-26.

16

The circumstances described by Detective Palinkas in his affidavit of

May 30, 2018 (Government Exhibit 1), when considered in their "totality," more than

adequately provided probable cause for the issuance of the search warrant on May 30,

2018.   As the United States Supreme Court has stated:

> This totality-of-the-circumstances approach is far more
> consistent with our prior treatment of probable cause   than
> is any rigid demand that specific "tests" be satisfied by every
> informant's tip. Perhaps the central teaching of our decisions
> bearing on the probable cause standard is that it is a
> "practical, nontechnical conception." *Brinegar v. United
> States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed.
> 1879 (1949). "In dealing with probable cause, ... as the very
> name implies, we deal with probabilities. These are not
> technical; they are the factual and practical considerations of
> everyday life on which reasonable and prudent men, not
> legal technicians, act." Id., at 175, 69 S.Ct., at 1310.

*Illinois v. Gates*, 462 U.S. 213, 230 - 231 (1983); s*ee also United States v. Steppello*,

664 F.3d, 359, 363-364 (2d Cir. 2011).


In considering the reliability of Derek Welch as an informant when he

provided information to Detective Palinkas on May 30, 2018 for purposes of establishing

probable cause for the issuance of the search warrant for the premises located at 6259

Runkle Avenue, it was proper for Judge Digiacomo to assess that information by

examining the "totality of the circumstances" bearing on its reliability.   *Illinois v. Gates*,

462 U.S. 213, 230-231 (1984); *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir.

1993).   Further, these circumstances must be considered from the perspective of a

17

reasonable police officer in light of his training and experience.    *United States v. Moreno*, 897 F.2d 26, 31 (2d Cir. 1990), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990); *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).   Considering Detective Palinkas's training and experience as set forth in his affidavit of May 30, 2018 (Government Exhibit 1), it was reasonable for Judge Digiacomo to accept his reliance on the information provided to him by Derek Welch. As the United States Supreme Court held in *Florida v. Harris*:

> A police officer has probable cause to conduct a search when "the facts available to [him] would 'warrant a [person] of reasonable caution in the belief' " that contraband or evidence of a crime is present. Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)); see Safford Unified School Dist. # 1 v. Redding, 557 U.S. 364, 370–371, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009). The test for probable cause is not reducible to "precise definition or quantification." Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision." Gates, 462 U.S., at 235, 103 S.Ct. 2317. All we have required is the kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." Id., at 238, 231, 103 S.Ct. 2317 (internal quotation marks omitted).

*Florida v. Harris*, 568 U.S. 237, 243-244 (2013).


       In paying "great deference" to Judge Digiacomo's determination of probable cause for the issuance of the search warrant of May 30, 2018 authorizing the search of the premises at 6259 Runkle Avenue, I find that Judge Digiacomo had a

substantial basis for concluding that probable cause existed.   *Illinois v, Gates*, 462 U.S.

213, 238-239 (1984); *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993).


　　　　　Finally, even if it were determined that legal probable cause was lacking

when Judge Digiacomo issued the search warrant on May 30, 2018, that deficiency

would not mandate the suppression of the evidence seized pursuant to this warrant.

As the United States Supreme Court has held:


>　[T] exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.
>
>　　　　*    *    *
>
>　[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.
>
>　　　　*    *    *
>
>　It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.   In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.   "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."   (citation omitted). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. 897, 916, 918, 921 (1984).

The facts and circumstances established in the evidentiary hearing convince me that Detective Palinkas acted in good faith in applying for the search warrant which was issued by Judge Digiacomo and therefore, there is no legal basis to support a granting of the defendant's motion to suppress the use of the evidence seized.

## **CONCLUSION**

Based on the foregoing, it is hereby recommended that defendant's motions to suppress the use of his statements given to Special Agent Gardner on May 30, 2018 and the use of evidence seized from 6259 Runkle Avenue, Ashtabula, Ohio on May 30, 2018 pursuant to a search warrant be in all respects denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.   *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**   *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
          September 23, 2019

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**